# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1694

_____

United States of America

*Plaintiff - Appellee*

v.

Raymond Cortez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: October 25, 2013
Filed: March 4, 2014
[Unpublished]

_____

Before BYE, SMITH, and BENTON, Circuit Judges.

_____

PER CURIAM.

Raymond Cortez was convicted after a jury trial of one count of making a false, fictitious, or fraudulent material statement, in violation of 18 U.S.C. § 1001(a)(2).

The district court[1] imposed a within-Guidelines range sentence of 21 months' imprisonment. Cortez now appeals his conviction and sentence. We affirm.

## I. *Background*

Cortez was charged with one count of making a false, fictitious, or fraudulent material statement, in violation of 18 U.S.C. § 1001(a)(2). The charge stemmed from a purported false statement that Cortez made to a United States Postal Inspector investigating a conspiracy to obtain federal student loan proceeds by fraud. Cortez entered into a written plea agreement with the government in which he agreed to plead guilty to the charge. The plea agreement included the following stipulation, in which Cortez admitted to the following facts:

A.   On or about October 13, 2007, defendant's son and others attempted to get C.Z. to cash a federal student loan proceeds check at a check-cashing establishment near a specific grocery store on First Avenue in Cedar Rapids, Iowa. Defendant was with his son and the others at the time and drove them to the area of the check-cashing establishment in defendant's black Hummer vehicle. Rather than cash the check, C.Z. took the check and fled on foot. Defendant and the others chased C.Z. in defendant's black Hummer with defendant driving the vehicle. C.Z[.] ran into the grocery store, and defendant and the others left the area in defendant's black Hummer.

B.   In November 2007, a United States Postal Inspector (Inspector) was investigating a scheme to defraud the United States Department of Education concerning the federal student loan proceeds check referred to in paragraph A above and the incident involving the chase of C.Z. in the Hummer. On or about November 20, 2007, the Inspector was participating in the execution of a search warrant at defendant's son's Cedar Rapids

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

residence. Defendant drove up to the residence in his black Hummer and spoke to the Inspector. The Inspector identified himself to defendant as a United States Postal Inspector. The Inspector asked defendant if defendant knew anything about a black Hummer chasing an individual down First Avenue about a month prior. Defendant falsely denied knowing anything about the chase. Defendant made the false statement to the Inspector willfully and knowing that his statement was false. The false statement was material to the Inspector's investigation.

Cortez "agree[d] this stipulation [could] be used against [him] at any time in any proceeding should [he] violate or refuse to follow through on this plea agreement, regardless of whether the plea agreement has been accepted by the Court." At a change-of-plea hearing, Cortez did not follow through on the plea agreement and did not plead guilty.

Subsequently, the case was tried to a jury. The factual stipulation was admitted into evidence at trial. Cortez moved for judgment of acquittal at the close of the government's case and renewed that motion at the close of all evidence. The district court denied the motions. The jury found Cortez guilty of making a false, fictitious, or fraudulent material statement, in violation of 18 U.S.C. § 1001(a)(2).

At sentencing, over Cortez's objection, the district court applied a base offense level of six under U.S.S.G. § 2B1.1(b)(1)(D) based on its finding of a loss amount of between $30,000 and $70,000. Also over Cortez's objection, the district court applied a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. The court calculated an advisory Guidelines range of 15 to 21 months' imprisonment. It ultimately sentenced Cortez to 21 months' imprisonment.

II. *Discussion*

On appeal, Cortez argues that (1) there was insufficient evidence to support the jury's verdict, (2) the district court erred in applying a two-level enhancement for

obstruction of justice as a result of his testimony at trial, (3) the loss amount attributed to him under U.S.S.G. § 2B1.1 was not supported by the evidence, and (4) his sentence is substantively unreasonable.

## A. *Sufficiency of the Evidence*

"We review the sufficiency of the evidence de novo, construing the evidence in the light most favorable to the verdict and will only overturn the conviction if no reasonable jury could find [Cortez] guilty beyond a reasonable doubt." *United States v. Jirak*, 728 F.3d 806, 811 (8th Cir. 2013) (citation omitted). "On appeal, the evidence is viewed in the light most favorable to the government, resolving evidentiary conflicts in favor of the government and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *United States v. Hinojosa*, 728 F.3d 787, 789 (8th Cir. 2013) (citation omitted).

Cortez was convicted of making a false, fictitious, or fraudulent material statement, in violation of 18 U.S.C. § 1001(a)(2).

> "To establish a violation of 18 U.S.C. § 1001, the Government must prove that: '(1) the defendant made a statement; (2) the statement was false, fictitious or fraudulent as the defendant knew; (3) the defendant made the statement knowingly and willfully; (4) the statement was within the jurisdiction of a federal agency; and (5) the statement was material.'" *United States v. Rice*, 449 F.3d 887, 892 (8th Cir. 2006) (quoting *United States v. Johnson*, 937 F.2d 392, 396 (8th Cir. 1991)).

*United States v. McKanry*, 628 F.3d 1010, 1018 (8th Cir. 2011).

Having reviewed the record, we conclude that sufficient evidence supports the jury's verdict. In fact, the detailed factual stipulation contained in Cortez's written plea agreement *and entered into evidence at trial* satisfies all the elements of § 1001(a)(2). In that stipulation, Cortez admitted that he "falsely denied" to a "United States Postal Inspector" that he knew "anything about the chase." He admitted to

-4-

making "the false statement to the Inspector willfully and knowing that his statement was false." He also admitted that this "false statement was material to the Inspector's investigation." Thus, the factual stipulation satisfies all five elements of § 1001(a)(2).

## B. *Sentencing*

Cortez also argues that the district court procedurally erred in calculating his advisory Guidelines range and that his sentence of 21 months' imprisonment is substantively unreasonable.

"When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply a deferential abuse-of-discretion standard." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quotations and citations omitted). Improperly calculating the advisory Guidelines range constitutes procedural error. *Id*. "In the absence of procedural error below, we should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id*. (quotation and citation omitted). Under this standard, we "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id*. (quotation and citation omitted). On appeal, we may apply a presumption of reasonableness to a within-Guidelines sentence. *Id*. In evaluating the substantive reasonableness of a sentence, we "must give due deference to the district court's decision that the [18 U.S.C.] § 3553(a) factors, on a whole, justify the extent of the variance." *Id*. at 461–62 (quotation and citation omitted).

### 1. *Procedural Error*

Cortez alleges that the district court procedurally erred in applying the two-level enhancement for obstruction of justice and calculating the amount of loss between $30,000 and $70,000.

## a. *Obstruction of Justice*

Cortez argues that the district court erroneously applied a two-level enhancement for obstruction of justice. Cortez contends that conflicts between his testimony and that of other witnesses do not establish that he was dishonest or willfully misleading. He maintains that, by the time of trial, the majority of events discussed in testimony were five years old and that the event in question lasted approximately five to ten minutes.

Section 3C1.1 of U.S.S.G. provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

Section 3C1.1

> is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

*Id*. cmt. n.2. "[C]ommitting, suborning, or attempting to suborn perjury" are "types of conduct to which this enhancement applies." *Id*. cmt. n.4(B).

"A witness testifying under oath" commits perjury when he "gives false testimony concerning a material matter with the willful intent to provide false testimony." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993), *possibly abrogated on other grounds by United States v. Wells*, 519 U.S. 482, 117 S. Ct. 921, 137 L. Ed. 2d 107 (1997). Because false testimony may instead be the result of "confusion, mistake, or faulty memory," district courts "must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice" before applying a sentence enhancement under U.S.S.G. § 3C1.1. *Id*. at 95, 113 S. Ct. 1111. A district court must then decide by a preponderance of the evidence whether a defendant committed perjury for § 3C1.1 purposes. *See United States v. Stulock*, 308 F.3d 922, 926 (8th Cir. 2002). We review such a finding for clear error. *See id.* at 925–26.

*United States v. Petrovic*, 701 F.3d 849, 859 (8th Cir. 2012).

Here, the district court applied the obstruction-of-justice enhancement, explaining:

With regard to the adjustment for obstruction of justice, the Court must make this assessment independent of the jury's verdict, and I find by a preponderance of the evidence that the defendant did commit perjury at trial in making statements under oath in front of the jury and Court for the purpose of trying to avoid conviction. These were material false statements. They were not made out of confusion or mistake. They were definitely willful. And as I said, they were material because they went to the heart of the case. *So the obstruction of justice is appropriately scored*.

(Emphasis added.) Cortez argues that our review is hampered because the district court did not cite which statements resulted in application of the enhancement. But the court was reviewing Cortez's objection to application of the enhancement as set

forth in ¶ 16 of the presentence report (PSR), which identified the factual statements at issue:

> According to the prosecutor's offense conduct statement, the defendant committed perjury during his testimony at trial by falsely claiming that Inspector [Ronald] Jewell only asked him about an assault and battery during the November 20, 2007, interview; falsely testifying that he did not admit lying to Inspector Jewell when he was re-interviewed on April 4, 2012; and falsely testifying that the factual statement in the written plea agreement was not true. Therefore, a two-level increase for obstruction of justice is recommended.

In applying the enhancement, the court complied with *Petrovic*, as it confirmed that it had independently assessed the jury's verdict and found by a preponderance of the evidence that the defendant did commit perjury at trial in making materially false statements under oath in front of the jury. A review of the record shows that Cortez's testimony at trial, in which he claimed that Inspector Jewell asked him only about an assault and battery during the November 20, 2007 interview, is directly contrary to the factual stipulation that Cortez agreed to in the written plea agreement. Accordingly, we hold that the district court did not clearly err in applying the obstruction-of-justice enhancement.

### b. *Loss*

Cortez contends that the court's loss calculation of $40,000 lacks support in the record because he never willfully participated in the scheme to defraud and was not charged with doing so. Cortez contends that the evidence established that sums paid to him by his son, Michael Cortez, was due to Michael's personal indebtedness to Cortez and not because of a business arrangement between them. He also argues that no relationship exists between the charged fraudulent statements and a $40,000 loss because the check at issue during the chase was only for $3,300. He concludes that no further monetary loss is attributable to the false statement.

"The government bears the burden of proving the amount of loss by a preponderance of the evidence." *United States v. Sample*, 213 F.3d 1029, 1034 (8th Cir. 2000) (citation omitted). "We review the district court's factual findings regarding the amount of loss for clear error." *Id.* (citation omitted).

At sentencing, the district court found "that the amount of the loss was as set forth in the presentence investigation report, Paragraph 20, more than $30,000 but less than $70,000." The court found "ample evidence that [Cortez] did receive $40,000 of the proceeds from the scheme and that that amount of loss would have been reasonably foreseeable to him and within the scope of the relevant conduct that he agreed to jointly undertake." In turn, ¶ 20 of the PSR provides:

> The defendant participated in that scheme by providing some of the initial supplies that were used to commit the scheme, moving some of the evidence in order to evade detection by law enforcement, and transporting the participants in the offense to cash one of the financial aid checks that had been unlawfully obtained . . . .
>
> The defendant's offense of conviction involved making a false statement regarding his involvement in chasing an individual who took off with a $3,323 check from the financial aid scheme . . . .
>
> The evidence in this case establishes that the defendant participated in a financial aid scheme and that he received approximately $40,000 of the proceeds from that scheme. The fact that the defendant received $40,000 of the proceeds from the financial aid fraud scheme establishes that that amount of loss would have been reasonably foreseeable to him and within the scope of the relevant conduct that he agreed to jointly undertake.

Trial testimony supports the PSR's factual statements. Specifically, Michael testified that Cortez did "get . . . money from the scheme from other checks." He testified that Cortez "probably [received] 40 grand" "from other checks in the scheme." Similarly, Brenda Cortez, Michael's wife, testified that Cortez was "always

receiving money" from the "student loan checks." She recalled Cortez saying that he "need[ed] the money" after C.Z. fled with the check.

Cortez argues that $40,000 in loss should not be attributed to him because he was not a participant in the scheme. The aforementioned evidence shows otherwise. Cortez's argument that the district court erroneously applied the loss enhancement because "no other individuals were defrauded as a result of any statement made by [Cortez] that evening" also fails because, as the government points out, Cortez made the false statement to the United States Postal Inspector to conceal the scheme and avoid detection; therefore, the statement was made in furtherance of the scheme. *Cf. United States v. Finck*, 407 F.3d 908, 913 (8th Cir. 2005) ("During the investigation, Finck made two materially false statements to law enforcement officials . . . . These statements led law enforcement astray and allowed him to further his fraudulent scheme during the investigation."). Morever, courts have recognized that "'[a]voidance of detection and prevention of recovery of money lost by the victims are within, and often a material part of, the illegal scheme. Further profit from the scheme to defraud, as such, may be over, and yet the scheme itself be not ended.'" *United States v. Redcorn*, 528 F.3d 727, 741 (10th Cir. 2008) (alteration in original) (quoting *United States v. Riedel*, 126 F.2d 81, 83 (7th Cir. 1942)).

Therefore, we conclude that the district court did not clearly err in calculating the amount of loss.

## 2. *Substantive Reasonableness*

Finally, Cortez argues that his sentence is substantively unreasonable because it fails to account properly for his good works in the community, the lack of severity of his conduct, and the availability and deterrent effect of a probationary sentence.

"[W]e note that [Cortez's] within-guidelines sentence is presumptively reasonable." *United States v. Roddy*, 533 F. App'x 684, 685 (8th Cir. 2013) (per curiam) (citation omitted). After reviewing the record, we conclude that Cortez has

not rebutted this presumption. In imposing the 21-month sentence, the district court stated that it "ha[d] carefully considered all the statutory factors at 18 United States Code Section 3553(a)," "considered the trial evidence," considered "arguments and character letters," and "carefully considered the oral and written arguments of defense counsel and the reply by the United States" regarding a variance.

The district court's placement of "greater emphasis in this case on factors that favored a sentence within the advisory range . . . than on other § 3553(a) factors that might favor a more lenient sentence is a permissible exercise of the considerable discretion available to a sentencing court under the post-*Booker*[2] regime." *United States v. Ruelas–Mendez*, 556 F.3d 655, 658 (8th Cir. 2009). Having reviewed the sentencing transcript, we conclude that "the district court thoroughly considered the relevant factors set forth in § 3553(a) and reached a substantively reasonable conclusion." *United States v. Bauer*, 626 F.3d 1004, 1010 (8th Cir. 2010).

### III. *Conclusion*
Accordingly, we affirm the judgment of the district court.

_____

[2] *United States v. Booker*, 543 U.S. 220 (2005).