

# IN THE
# TENTH COURT OF APPEALS

## No. 10-09-00016-CR

**DAVID LESTER BETHARDS,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 249th District Court
Johnson County, Texas
Trial Court No. F42295**

## MEMORANDUM  OPINION
## ON PETITION FOR DISCRETIONARY REVIEW

As authorized by Rule 50 of the Rules of Appellate Procedure, we issue this modified opinion within 60 days after Appellant filed a Petition for Discretionary Review.  TEX. R. APP. P. 50.

A jury found David Lester Bethards guilty of fourteen counts of possession of child pornography.  The trial court assessed his punishment at five years' imprisonment

for counts one through nine and ten years' imprisonment for counts ten and twelve through fifteen.[1]  In three issues, Bethards appeals.  We will affirm.

In his first issue, Bethards contends that the trial court erred in denying his motion to suppress because his consent to search was involuntary.

Bethards moved to suppress "[a]ny and all tangible evidence seized by law enforcement officers or others . . . in connection with the investigation of this case, including but not limited to the computers" that were seized from his residence. Cleburne Police Department Investigator Shawn Bagwell testified that, on July 24, 2007, Investigator Kelly Summy informed him that she had received information that Bethards might have child pornography on his home computer and that she had begun the process of obtaining a search warrant for Bethards's residence and, specifically, for his computer.  The next day, however, Summy told Bagwell that the complainant had called and revealed that she had told Bethards about the complaint, even though she had previously agreed not to tell him until the police could meet with him.  Bagwell and Summy thus went to Bethards's home to prevent destruction of any potential evidence.

Bethards answered the door, and Bagwell and Summy introduced themselves. Bethards stepped out onto the porch and shut the door.  Bagwell explained to Bethards that they had received a complaint that there might be child pornography on his computer.  Bethards stated that, during the previous few days, he had been "goofing around" on the computer when he clicked on the wrong button, causing multiple

---

[1] The State had waived count eleven.

images of child pornography to appear on his computer screen. He said that each time an image would appear, he would attempt to close the image but that he had not attempted to delete any of the images of child pornography from his computer because he had wanted to show his wife what had happened. Bagwell then asked Bethards for consent to take his computer. Bagwell told Bethards that he did not have to give them consent and that they had already begun the process of attempting to obtain a search warrant for his house and computer but that they would like to have his consent. Bethards denied consent. Bagwell then told Bethards that until the search warrant was either granted or denied, he was not going to allow Bethards to go back into his house because it was necessary to preserve the electronic evidence. Bethards then let Bagwell and Summy inside the house and told them that they could take the computer.

Bagwell and Summy ultimately took two computers from Bethards's home.[2] Bagwell sought Bethards's consent to seize each computer individually, and Bethards affirmed his consent. Even after Bagwell and Summy were in the house and Bagwell had unplugged Bethards's computer, Bagwell explained to Bethards that they still had not left with the computers and he had the right to revoke his consent and wait until the search warrant was either granted or denied. Bethards again affirmed his consent. At the conclusion of the search, Bagwell asked Bethards to come visit with him at the police department the next day. Bethards indicated that he would.

The next day, Bethards went to the police station and met with Bagwell. During the meeting, Bethards again expressed his consent to their taking the computers.

---

[2] Bethards's mother's computer was also in the home, and it was seized.

Bethards stated that although he had thought at one point that he should have made Bagwell get a search warrant, he thought that it would make him look guilty, so he decided to let Bagwell have the computers. Furthermore, Bagwell called Bethards later that day to inform him that he was taking his computer to have it analyzed and he just wanted to make sure that Bethards had not changed his mind. Bethards again affirmed his consent.

Bethards testified that when Bagwell first arrived at his home, he felt like he had the choice to consent or refuse to allow Bagwell into his home; he at first had denied consent. However, when Bagwell then told Bethards that he was going to keep him out of his home, Bethards felt like he no longer had any choice, and he let Bagwell into his home.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's ruling on those questions *de novo*. *Id.* When, as here, the trial court does not make explicit findings of fact in ruling on a motion to suppress evidence, we "review the evidence in a light most favorable to the

trial court's ruling and assume that the trial court made implicit findings of fact supported by the record." *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (quoting *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)); *Carmouche*, 10 S.W.3d at 327-28.

A search conducted without a warrant issued on probable cause is *per se* unreasonable. *Fancher v. State*, 659 S.W.2d 836, 839 (Tex. Crim. App. 1983). However, consent to search is one of the well-established exceptions to the warrant requirement. *See State v. Ibarra*, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997). The State must prove by clear and convincing evidence that the consent to search was voluntary. *Id.*

Bethards argues that there are two key factors to consider in determining that his consent was involuntary: (1) he believed he "had been constructively evicted from his own home for an indefinite period of time" and (2) law enforcement had a less restrictive restraint available to them but chose not to employ it. First, while the state of Bethards's mind is a factor to be evaluated in assessing the voluntariness of his consent, it alone is not determinative. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). The question of whether a consent to search was "voluntary" is a question of fact to be determined from the totality of the circumstances. *Reasor*, 12 S.W.3d at 818. Second, even though Bethards states that if he had been informed that he could have waited inside his home, with law enforcement accompaniment, during the time required to obtain a ruling on the requested search warrant, "he would not have been put to the choice of being either constructively evicted from his home or giving consent

for law enforcement to search it," our analysis of whether his consent was given voluntarily remains the same. As Bethards acknowledges in his brief, "[t]he question before the Court on appeal in the present case is not whether law enforcement could reasonably prevent Appellant from reentering his residence, but whether, upon a review of the totality of the circumstances, Appellant's consent was involuntary." *Cf. Illinois v. McArthur*, 531 U.S. 326, 331-33, 121 S.Ct. 946, 950-51, 148 L.Ed.2d 838 (2001) (in deciding brief warrantless seizure of premises was reasonable while waiting on warrant, court considered police made reasonable efforts to reconcile law enforcement needs with demands of personal privacy by imposing least restrictive restraint).

Although Bagwell and Summy were wearing badges and firearms, they did not exhibit a show of force and instead consistently spoke with Bethards in a professional and conversational manner. Bethards was not arrested. Bagwell informed Bethards more than once that he had the right to refuse to allow the search. When Bethards once protested that if he refused, then the investigators were going to throw him out of his own home, Bagwell clarified that they were not, in fact, going to throw Bethards out of his home. Rather, they were only temporarily going to disallow him from going into the house until the search warrant was either granted or denied. *See Goines v. State*, 888 S.W.2d 574, 578 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (informing appellant that officers had right to get search warrant did not render appellant's subsequent consent involuntary). Bagwell had previously told Bethards that the District Attorney's office was already reviewing the search warrant for the home. Considering the totality of the circumstances, we conclude that Bethards's consent to search was voluntary and

that the trial court did not err in denying the motion to suppress. We overrule Bethards's first issue.

In his second issue, Bethards contends that the trial court abused its discretion in admitting testimony about voluminous pornographic images found on his computer because the probative value of such evidence was substantially outweighed by unfair prejudice. Special Agent John Day of the United States Secret Service testified that he found more than 1,200 child pornography images on Bethards's computer. The trial court then gave the jury a Rule 404(b) instruction on this extraneous-offense evidence. The next day, the State introduced into evidence twelve of the child pornography images that were not subject matter of the indictment. Just before the images were published to the jury, the trial court again gave the jury a Rule 404(b) instruction on the extraneous-offense evidence.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). "Under an abuse of discretion standard, an appellate court should not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

Under Rule 403, otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403.

In its seminal decision in *Montgomery v. State*, the Court of Criminal Appeals identified four non-exclusive factors to be considered in determining whether evidence should be excluded under Rule 403. 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1991) (op. on reh'g). Those factors were: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and, (4) the proponent's need for the evidence. *See id.* (citing 22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5250, at 545-51 (1978); EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE §§ 2:12, 8:03, 8:07 (1984)); *accord Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005).

More recently, the Court has looked to the language of Rule 403 and restated the pertinent factors.

> [A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnotes omitted); *accord Subirias v. State*, 278 S.W.3d 406, 408 (Tex. App.—San Antonio 2008, pet. ref'd); *Brock v. State*, 275 S.W.3d 586, 590 (Tex. App.—Amarillo 2008, pet. ref'd); *Stafford v. State*, 248 S.W.3d 400, 411-12 (Tex. App.—Beaumont 2008, pet. ref'd); *but see De La Paz* [v. State], 279 S.W.3d [336, 349 (Tex. Crim. App. 2009)] (applying *Montgomery* factors).

*Newton v. State*, 301 S.W.3d 315, 319 (Tex. App.—Waco 2009, pet. ref'd) (footnote omitted).

*Probative force of the evidence*: The testimony about the over 1,200 child pornography images found on Bethards's computer is probative because it assists the

jury in determining that the images did not arrive there by accident or mistake. Bethards acknowledges this in his brief. This factor weighs in favor of admissibility.

*Proponent's need for that evidence*: The State needed the testimony to rebut the defensive theories raised by Bethards (*i.e.*, that the images were on his computer by accident or mistake because they were pop-ups, caused by viruses, and/or occurred when he hit a wrong key). This factor weighs in favor of admissibility.

*Tendency of evidence to suggest a decision on an improper basis*: Limiting instructions were given (both orally and in the jury charge) limiting the jury's consideration of this extraneous-offense evidence. Bethards argues that the "sheer volume of images referred to is not the type of evidence which the jury could reasonably consider only for a limited purpose, even with the instruction requested by Appellant's trial counsel and granted by the trial court." But juries are presumed to follow the trial court's instructions in the manner presented. *See Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996). And here, there is no evidence that the jury was confused by the instruction or the charge. Furthermore, the jury was told that there were over 1,200 images of child pornography found on Bethards's computer, but they only viewed twelve images that were not subject matter of the indictment. This factor does not weigh in favor of exclusion of the evidence.

*Jury confusion or distraction, undue weight, and amount of time or repetition*: These factors concern whether presentation of the evidence consumed an inordinate amount of time or was repetitious, and the evidence's tendency to confuse or distract the jury or to cause the jury to place undue weight on its probative value. *See Gigliobianco*, 210

S.W.3d at 641-42; *Newton*, 301 S.W.3d at 320. Bethards acknowledges that the amount of time required to develop this evidence was relatively short. We do not believe that it could cause jury confusion or distraction or cause the jury to give it undue weight. All of these factors thus favor admission.

Rule 403 "envisions exclusion of [relevant] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). We cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by the extraneous-offense evidence and its probative value. Thus, the trial court did not abuse its discretion by overruling Bethards's Rule 403 objection. We overrule Bethards's second issue.

In his supplemental issue,[3] Bethards contends that the evidence was insufficient to support his conviction because the State did not prove that he intentionally or knowingly possessed child pornography.

When reviewing a challenge to the sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 422 (Tex. Crim.

---

[3] Bethards requested and was granted leave to file a supplemental appellant's brief.

App. 1992).  In doing so, any inconsistencies in the evidence are resolved in favor of the verdict.  *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

A person commits the offense of possession of child pornography if he "knowingly or intentionally possesses visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct; and . . . the person knows that the material depicts the child [engaging in the sexual conduct]."  TEX. PENAL CODE ANN. § 43.26(a) (Vernon 2003).  A person possesses something when he exercises actual care, custody, control, or management over it.  *Id.* § 1.07(a)(39) (Vernon Supp. 2011).

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.  *Id.* § 6.03(a) (Vernon 2003).  A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.  *Id.* § 6.03(b).  A person acts knowingly, or with knowledge, with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result.  *Id.*  Proof of a culpable mental state almost invariably depends upon circumstantial evidence.  *Gant v. State*, 278 S.W.3d 836, 839 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Lee v. State*, 21 S.W.3d 532, 539 (Tex. App.—Tyler 2000, pet. ref'd)).  A jury can infer knowledge from all the circumstances, including the acts, conduct, and remarks of the accused and the surrounding circumstances.  *Id.*

Special Agent Day testified that the images corresponding to counts one through five, seven through ten, and twelve through fifteen were found in the unallocated space of the hard drive. The image corresponding to count six was found in the temporary internet files of the hard drive. Day testified that when one looks at a web page, the graphics become artifacts that are automatically placed into the temporary internet history. If a person wanted to open a temporary internet folder, then they could click on those pictures and look at them again. When the temporary internet folders are full, the oldest content is then emptied into unallocated space.

Bethards's sister testified that when she visited him in late April of 2007, Bethards told her that he had bought the computer used. During that visit, she did a "basic tune-up" on the computer, which included deleting the temporary internet files on the computer at that time. Day testified that the image in the temporary internet file was stored on the computer on July 23, 2007.

Day also testified that the computer had dates going back to 2000 and that there was no way to tell when the fourteen pictures that were found in the unallocated space were placed on the hard drive but that, from July 23 to July 24, 2007, Bethards's computer was used to visit over 400 websites containing child pornography images and to make over 115 searches for child pornography. There were some viruses on Bethards's computer, but he did not think they were capable of or designed to generate child pornography on the computer. In his opinion, the images were not the result of pop-ups due to the sheer volume of the images and the various types of images.

Bethards's wife testified that she saw Bethards looking at a child pornography website on the computer. On July 24, 2007, she called and asked her son to come over and pull up the Internet history on the computer. He found several child pornography websites that had been placed under "favorites." Investigator Bagwell testified that when he talked to Bethards on July 26, 2007, Bethards acknowledged that there was child pornography on his computer and stated that it began appearing on his computer a few weeks prior. Bethards testified that he was on a "legal" website when web pages containing child pornography began popping up. He eventually had to unplug his computer. The next day, the same thing happened, but before unplugging the computer, he bookmarked the websites so that he could report them to the webmaster. Bethards testified that he had intentionally searched for child pornography no more than six times because he was curious and was looking for information on whether the websites were legal and how to stop them from taking over his computer.

Relying on *Barton v. State*, 648 S.E.2d 660 (Ga. Ct. App. 2007), and several federal circuit court cases, Bethards contends that the evidence is insufficient to show that he intentionally or knowingly possessed the images in this case because the images were stored in temporary internet files. However, the Texas courts that have addressed this issue have concluded that images stored as temporary internet files can amount to knowing possession by the user of the computer. *See Gant*, 278 S.W.3d at 840-41; *see also Anders v. State*, No. 10-09-00147-CR, 2010 WL 4813678, at *1 (Tex. App.—Waco Nov. 24, 2010, pet. struck) (mem. op., not designated for publication).

In this case, there is evidence that the images on Bethards's computer did not appear by default or accident but that he intentionally or knowingly possessed them. We are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326; 99 S.Ct. at 2793. Viewing all the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to support Bethards's conviction. We overrule Bethards's supplemental issue.

Having overruled all Bethards's issues, we affirm the trial court's judgment. Our opinion and judgment dated April 13, 2011, are withdrawn, and this opinion is substituted as the opinion of the court. TEX. R. APP. P. 50(a).


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed July 20, 2011
Do not publish
[CR25]